### THE ANCHORIA.

### MULVANA v. THE ANCHORIA.

(District Court, S. D. New York. December 26, 1896.)

PERSONAL INJURIES—CHILD IN STEERAGE SCALDED AT THE TABLE—A MERE ACCIDENT —SHIP NOT IN FAULT.

The libelants' son, about three years of age, a passenger in the steerage, was scalded while sitting at the table at the evening meal by hot gruel splashed on its face from a bucket carried by the steward. The evidence was contradictory whether some little girls playing ran against the bucket, or whether the steward slipped upon the floor, made wet by the drippings of a water cooler near by. The steward was a competent and a careful man. *Held*, whichever of the above was the cause, no fault of the ship was proved; the case should be deemed an accident without fault.

This was a libel in rem by Thomas Mulvana against the steamship Anchoria to recover damages for personal injuries to a passenger.

Goodrich, Deady & Goodrich and Thomas A. Sullivan, for libelant. Cowen, Wing, Putnam & Burlingham, for respondent.

BROWN, District Judge. On the evening of September 22, 1894, about 8 o'clock, the libelant's son, about three years of age, a passenger with his father and mother on board the steamer Anchoria from Londonderry to this port, while sitting on the starboard side of the starboard table in the steerage, near the forward end, at his evening meal, was scalded upon the face and neck by the splashing of some hot gruel from the bucket in which the steward was supplying it to the steerage passengers. The mother, and a passenger near to her, sitting opposite to the child, say that the steward came from port to starboard, and slipped so as to fall and hit the bucket against the end of the bench, which threw the gruel upon the face of the child. The steward testifies that he

did not slip or fall, but that he was going along the starboard side of the table, and had served the child and the parents with three mugs of gruel; and that two young girls were playing and running around from the port to the starboard side, and that on seeing them he stepped a little more to starboard to let them pass; but that one of the girls, in a little lurch of the ship, struck the bucket, so as to splash its contents upon the steward as well as the child. The father did not see the accident, having just previously left the table to get some sugar; but he confirms the steward's statement that he was going forward on the starboard side, though he says he saw the steward down. All say that there was some water upon the floor, coming from a water cooler which stood near by, with a pail beneath to catch the drippings. The water cooler dripped, as the father says, because the faucet, used promiscuously, often was not shut tight; the pail beneath was also sometimes out of place; and it was used also for the slops of tea thrown into it by the steerage passengers after making tea for themselves.

The case seems to me not one in which I should be justified in making any decree against the ship or owners. No such negligence is made out as charges them with legal responsibility for this accident. This is manifestly so, if the accident was caused by the little girl in running against the bucket. On this point the testimony is not so clear as to satisfy me beyond doubt that the steward is incorrect. Mrs. Steckler's testimony that the steward had set down the bucket of gruel at the end of the port table, and went from port to starboard, is so very improbable from the other testimony that I am persuaded she has confused different occasions; and I think that she and Mrs. Mulvana are both mistaken in supposing that the steward was going around the table from port to starboard; and their mistakes in these particulars so weakens their testimony, in my judgment, as to leave the steward's account of the accident quite as probable as the other.

But even if the steward slipped upon the wet floor, I do not think this makes out a case of negligence in ship or owners. There was nothing lacking, or improper, or unusual in the equipment; and there is no evidence of the lack of ordinary care as respects that part of the steerage. Where a water cooler is placed as customary for the common use of children and steerage passengers, it is not to be supposed that there will not be some water on the floor. That this happens is no evidence of negligence in the ship. Nor is a little water upon the floor naturally any such source of danger, as in itself to constitute evidence of negligence, or to require an attendant to keep the floor dry, or to demand a wholly different arrangement for the water cooler. No previous similar accident from such a cause is in evidence, or known to the court. It was not to be reasonably anticipated. More or less water on deck is a constant attendant of sea voyages; but this does not ordinarily cause slipping by any of the ship's company, or accidents therefrom. The steward appears to have been a competent and careful man; and

the case is, I think, one of accident proper, and not one involving any legal fault in the ship or owners. See The Coleridge, 72 Fed. 676; Beltz v. City of Yonkers, 148 N. Y. 67, 69, 70, 42 N. E. 401.

The libel is, therefore, dismissed, but without costs.