(112 App. Div. 324)

DERBY v. DEGNON–McLEAN CONTRACTING CO. (two cases).

(Supreme Court, Appellate Division, Second Department. April 27, 1906.)

MUNICIPAL CORPORATIONS—DEFECT IN STREET—LIABILITY OF COMPANY CAUSING DEFECT—NEGLIGENCE.

    Where a company placed planking four inches thick over a hole which it had lawfully made in the pavement at some distance from the usual crossing, and at a point where there was heavy traffic, and the street was well lighted, it was not guilty of negligence rendering it liable for injuries to a pedestrian caused by stubbing her toe on the planking.

    [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1630, 1688, 1689.]

    Hooker, J., dissenting.

Appeal from Trial Term.

Actions by Orville P. Derby against the Degnon–McLean Contracting Company and by Minnie L. Derby against the same defendant. From judgments for the plaintiffs, and from orders denying new trials, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

James F. Donnelly, for appellant.
Melville J. France, for respondents.

WOODWARD, J. These two actions—one by the wife for personal injuries and the other by the husband for the loss of his wife's services,

medical treatment, etc.—were tried together, and the questions on appeal necessary to be determined are the same. We will consider the record in the case of the wife.

The plaintiff was injured on the night of the 20th of November, 1902, by stubbing her toe upon the planking which defendant had placed over a hole cut in the asphalt pavement for the lawful purpose of carrying on a detail of the work of constructing the subway, for which the defendant had the contract for a section at the point where this accident occurred, at the corner of Forty-Second street and Broadway, in the borough of Manhattan. This planking was about six by eight feet, overlapping the hole to be covered about one foot on each side, was several feet below the crossing where people usually passed, and was between the curb and the street railroad tracks. The plaintiff, with her mother and an uncle, were returning from the theater, and were about to take the car. The car stopped below the crossing, and the plaintiff, in attempting to reach the car, stumbled over the planking, and fell, receiving the injuries for which the jury has found a verdict in her favor. The planking, the jury might have found from the evidence, was four inches thick, though the preponderance of evidence would indicate that it was something less than that; probably nearer three inches. Considering its location, the necessity for having thick planking to support the heavy traffic at Broadway and Forty-Second street, did this constitute negligence on the part of the defendant? This planking was placed below the crossing, not in the sidewalk, but in the driveway. It was placed there to cover holes necessarily made in carrying on the work of constructing the subway, and reasonable care in covering these holes required that the planking should be thick and strong enough to sustain the weight and wear of a very heavy and constant traffic. It was not in the line of ordinary foot travel, and was constructed for the purpose of temporarily making the highway safe for teams and vehicles, while the work was under way. The rule was early asserted in this state that:

"That which never happened before, and which in its character is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening, and guarding against that remote contingency." Hubbell v. City of Yonkers, 104 N. Y. 434, 439, 10 N. E. 858, 58 Am. Rep. 522, and authorities there cited.

In this case, if men of ordinary prudence had been asked the question whether any accident was likely to befall a pedestrian lawfully using the highways at the point of this accident, can there be any doubt of the universal answer? Was there any good reason to expect that any one would, under the conditions which always prevail at this junction of thoroughfares, go outside of the ways provided for pedestrians, and stumble over these planks? True, any one had a right to make use of the highways at any point, but the question here is not what rights people have in the highways, but whether the defendant, which was lawfully occupying the highways in the construction of a great public work, had any reason to anticipate the accident which has happened. It seems to us that this case cannot be distinguished in principle from that of Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401,

or from Hamilton v. City of Buffalo, 173 N. Y. 72, 65 N. E. 944, and unless this can be done the judgments must be reversed.

It is urged that Fordham v. Gouverneur Village, 160 N. Y. 541, 55 N. E. 290, supports the plaintiff's recovery in this case; but we think it is clearly distinguishable. In that case the village authorities maintained a bridge across a stream which divided the municipality. During the day they had cut several holes through the footway of the bridge for the purpose of carrying a pipe under the bridge and across the stream. At night they covered these holes along the footway with three-inch planks, which projected about that distance above the ordinary level of the footway, without placing any lights, or giving any warning of the obstruction. The evidence showed that there were no street lamps nearer than 150 feet from either end of the bridge, and that it was dark when the plaintiff's intestate went upon the bridge, and the court very properly held that a question was presented for the jury. There is a vast difference between placing a three-inch obstruction upon a footpath in a dark place, and placing a similar obstruction in a driveway, where it was not expected that any one would be walking except under special circumstances, and then with that degree of care which is always required when one goes out of the regular way, and where it is always sufficiently light to enable any one to see the obstruction plainly. If this obstruction had been in the sidewalk or in the crosswalk, and the place had been dark, we should agree that it was a question for the jury to determine whether the defendant had exercised reasonable care; but the obstruction being out of the line of foot travel, and the way being light, we cannot see that the case is one for the jury.

The judgments and orders appealed from should be reversed, and a new trial granted; costs to abide the event. All concur, except HOOKER, J., who dissents.